UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

**AMBER YOUNG,**
**on behalf of herself and those**
**similarly situated present and**
**former employees of Defendant,**

    **Plaintiff,**

v.                                                  **CASE NO.: 2:22cv91**

**CARING HANDS AND SUPPLEMENTARY**
**ENRICHMENT EDUCATION, LLC OF VIRGINIA**

    **Defendant.**

## COMPLAINT

COMES NOW the Plaintiff, Amber Young (hereinafter "Plaintiff"), on behalf of herself and those similarly situated present and former employees of Defendant Caring Hands and Supplementary Enrichment Education, LLC of Virginia (hereinafter "Defendant"), and for her opt-in class action under the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq* (hereinafter "FLSA"), against Defendant, states and alleges as follows:

### I.   Introduction

Plaintiff at all times was a non-exempt, hourly home health care employee of Defendant. She worked at least 62 hours per week for which she was paid at the rate of straight time. In addition, she worked an additional 20 plus hours per week for which she received no compensation. Plaintiff is similarly situated to dozens of current and former non-exempt, hourly employees of Defendant who worked extensive overtime hours and were paid straight time or nothing.

## II. Jurisdiction and Venue

1. Jurisdiction to bring this opt-in class action on behalf of the named Plaintiff and all similarly situated present and former employees at Defendant under the FLSA is vested in this Court by 28 U.S.C. § 1331.

2. Defendant's primary place of business is located in Virginia Beach, Virginia. Venue is proper in this district under 28 U.S.C. § 1391.

## III. Named Plaintiff

3. Plaintiff is an individual who resides in Suffolk, Virginia.

4. Plaintiff worked for Defendant between October 2019 and December 2021.

5. Plaintiff is similarly situated to dozens of present and former employees of Defendant who worked for Defendant during the applicable time period (March 2019 through the present).

6. The use of "Plaintiff" hereinafter includes the named Plaintiff and those similarly situated present and former employees of Defendant, especially those who opt into this action.

## IV. Defendant

7. Defendant is a Limited Liability Company doing business in North Carolina and Virginia.

8. Defendant is a licensed provider of mental health services and mental retardation (intellectual disability) services in each state.

9. Defendant employs dozens of individuals to provide in-home health care for the home bound individuals it serves.

2

10. The Virginia office of Virginia is located at 4520 Holland Office Park, Suite 416, Virginia Beach, VA 23462.

11. At all material times Defendant was the "employer" of Plaintiff within the meaning of 29 U.S.C. § 203(b).

12. Not only does Defendant operate in interstate commerce by virtue of its offices in Virginia and North Carolina, but it grosses more than $500,000.00 in receipts annually.

13. Defendant also purchases supplies in interstate commerce, applies for payments in interstate commerce, and is paid by insurers and others via interstate commerce.

**V.   Factual Allegations Regarding Opt-In Class Overtime Claim**

14. Plaintiff joined Defendant in October 2019 as an in-home, health care provider for Plaintiff's brother.

15. Defendant paid Plaintiff between $12.00 and $14.00 an hour until she resigned on or about December 5, 2021.

16. Plaintiff worked seven days a week for Defendant.

17. The person for whom she provided care had a part-time job two days a week as a bagger at Harris Teeter.

18. Plaintiff spent six hours with him on the days when he worked part-time, and up to 10 hours with him on the days he did not work.

19. Plaintiff took him shopping, to visit friends and family, to work, to places like the zoo or AT&T if he needed to run any errands or handle any personal business.

20. Plaintiff helped him with his finances as far as budgeting, saving, going grocery shopping, recognizing when something is a scam, etc.

21. Plaintiff also helped him with his personal hygiene, home maintenance, making sure he cared for his pet properly, etc.

22. Defendant paid Plaintiff straight time hourly compensation for approximately 62 hours per week, but Plaintiff was entitled to overtime compensation for 22 hours a week which Defendant did not pay her.

23. Defendant owes Plaintiff at least $140.00 per week half-time pay for 113 weeks.

24. In addition, Defendant required Plaintiff to prepare detailed daily notes of her interactions with the client.

25. Not only did Defendant tell Plaintiff it would not pay her until it received these notes, but it consistently complimented her on their detail, scope, professionalism and timeliness.

26. The notes took Plaintiff at least three hours per day to prepare, and Defendant failed to pay anything for the resulting 21 hours per week that Plaintiff spent preparing the notes.

27. Since the 21 hours were in addition to the weekly 62 hours, all of the 21 hours preparing notes were overtime hours for which Defendant owes Plaintiff at least $400 per week.

28. The foregoing amounts should be doubled by the Court because the Defendant lacked a reasonable and good faith belief that its pay practices complied with the FLSA.

29. Defendant periodically labeled Plaintiff an independent contractor, and periodically labeled her an employee, although Plaintiff's duties never changed.

30. Defendant also took mysterious processing/administrative fees from her pay which lowered Plaintiff's net compensation without justification.

31. Defendant also was late in making bi-weekly payments to Plaintiff by as much as two months on a regular basis.

32. Defendant was required to maintain records of what and when it paid Plaintiff, and of the hours worked that Plaintiff submitted to Defendant, but, upon information and belief, it failed to maintain accurate records as required by the FLSA.

33. Defendant assigned Plaintiff to one client and controlled how many hours she could work for that client each week.

34. Defendant required Plaintiff to attend a three day training course before she could start working with the client, and then required her to attend that same training course annually thereafter.

35. Defendant required Plaintiff to contact Defendant concerning any care issues, and it required her to provide detailed, daily notes of her interactions with the client.

36. Plaintiff had no financial investment in Defendant, and only Defendant had control over profit and risk of loss from its practice.

37. Plaintiff performed services for Defendant on a regular and continuous basis over two years plus under the Defendant's business name.

38. Both Plaintiff and Defendant retained the right to terminate the working relationship between them at any time without incurring any liability, and Plaintiff did so without incurring any liability.

39. The services rendered by Plaintiff to her client were integral to and the very essence of Defendant's business.

40. Defendant employs dozens of people who perform the same services for its clients at their homes, subject to Defendant's rules.

41. Plaintiff's investment in the tools of her trade was minimal, whereas Defendant was heavily invested in its building and training and advertising, etc.

42. Plaintiff was not required to have any formal training, certification, license, experience or special skill to work for Defendant serving her client/brother.

43. Defendant paid Plaintiff by the hour as opposed to by the project or upon completion of her work.

44. Defendant required Plaintiff to perform her job a minimum of 80 hours per week.

45. Plaintiff worked more than full-time for Defendant.

46. At no time did Plaintiff hire anyone else to perform services for her client/brother.

47. Plaintiff never made her services available to the general public or anyone else other than the client/brother to whom Defendant assigned her.

48. Defendant reviewed written materials, such as professional periodicals, government memoranda, Department of Labor, Wage and Hour Division

guides, and participated in continuing education that informed it about its responsibilities under the FLSA, but it ignored that education.

49. This education is evidenced by the way pay practices flip flopped at Defendant.

50. The foregoing demonstrates that the Defendant committed willful violations of the FLSA, and accordingly this Court should accept claims reaching back within three years of the filing of this Complaint and Plaintiff's opt-in document.

51. The original signed Consent of the Plaintiff is attached as **Exhibit A**.

WHEREFORE, Plaintiff, along with similarly situated employees who opt into this lawsuit, moves the Court for judgment against the Defendant for all unpaid half-time and overtime compensation found by the Court to be due under the FLSA; for the period of three years prior to the filing of this Complaint, through the filing of this Complaint and thereafter if applicable to additional individuals who opt into this action; for an award of double, liquidated damages in the amount of the half-time and overtime compensation due, on the grounds that Defendant had no good faith, reasonable belief its actions complied with the FLSA under 29 U.S.C. § 216(b); for additional wages and liquidated damages, if any, which are revealed during the discovery process in this lawsuit; for an injunction prohibiting Defendant from continuing to violate the FLSA as alleged; for issuance of a Court approved Notice about the pendency and nature of this suit to current and former employees of Defendant who worked for Defendant as in-home health care workers during the three year period immediately preceding the filing of this Complaint; for interest

from the date of the failure to pay each installment of the compensation; for reasonable attorney's fees authorized by the FLSA; for the costs of this action, including expert witness fees, if any; and for such further relief as the Court deems appropriate.

TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

**AMBER YOUNG,**
**on behalf of herself and those**
**similarly situated present and**
**former employees of Defendant,**

By: /s/ Christopher Colt North
Of Counsel

Christopher Colt North
VSB#16955
The Consumer & Employee Rights Law Firm, P.C.
5629 George Washington Memorial Hwy, Suite D
Yorktown, VA 23692
Phone: (757) 873-1010
Fax: (757) 873-8375
Email: cnorthlaw@aol.com