IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| AMBER YOUNG, on behalf of herself and Those similarly situate present and Former Employees of Defendant,<br><br>*Plaintiff,*<br><br>v.<br><br>**CARING HANDS AND SUPPLEMENTARY ENRICHMENT EDUCATION, LLC OF VIRGINIA**<br><br>*Defendant.* | Civil Action No. 2:22-cv-00091 |

## MEMORANDUM IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT

Plaintiff Amber Young ("Ms. Young") and Defendant Caring Hands and Supplementary Enrichment Education, LLC of Virginia ("Caring Hands") have reached a tentative settlement agreement that will resolve all claims brought by Ms. Young in the above-captioned matter. In her lawsuit, Ms. Young alleges that Caring Hands failed to pay her overtime wages in violation of the Fair Labor Standards Act 29 U.S.C. §§ 201 *et seq.*, 29 U.S.C. §§ 201 *et seq.*, and Virginia Overtime Wage Act ("VOWA"), Va. Code § 40.1-29.2.

The settlement, including payment of attorneys' fees and expenses, is $75,000.00, which includes backpay and liquidated damages. For the reasons set forth below, the proposed settlement satisfies the criteria for approval of an FLSA settlement. Therefore, the parties jointly request that the Court enter an order: (1) approving the Settlement Agreement, which is incorporated herein by reference, as fair, reasonable, and just in all respects; (2) reserving jurisdiction in this matter for the purpose of enforcing the Settlement Agreement; and (3) dismissing this matter with prejudice upon final Court approval of the Settlement Agreement.

## I.     FACTUAL BACKGROUND

Caring Hands is a licensed provider of mental health services and intellectual disability services in the Commonwealth of Virginia. As part of the services it provides, Caring Hands assigns its employees to provide in-home care and companionship services for its clients. From approximately October 3, 2019 to April 30, 2021, Ms. Young was employed by Caring Hands to provide home care and companionship services to her brother. Ms. Young then formed her own limited liability company, Berbit LLC, and, from approximately May 1, 2021 to December 5, 2021, Caring Hands engaged Berbit to provide home care and companionship services to Ms. Young's brother.

At all times while providing services for Caring Hands, Ms. Young generally was scheduled for 62 hours per week. Naturally, Ms. Young worked less in some weeks, and, in some weeks, she worked more. Caring Hands paid Ms. Young $13.50 per hour for the hours she recorded on her time sheet each week. Though Caring Hands paid Ms. Young straight time for all hours recorded, Ms. Young alleges that Caring Hands failed to pay the required additional half time (.5) overtime pay to her for hours worked in excess of 40 hours per week.

Additionally, Ms. Young alleges that she spent an additional 21 hours per week (or 3 hours per day) preparing notes on her activities with her brother. Ms. Young alleges that she was not paid at all for the time spent preparing such notes. In accordance with state requirements, Caring Hands does require that its in-home services employees prepare and submit daily progress notes. However, Ms. Young had sufficient time during the hours spent with her brother to prepare the required daily progress notes. Therefore, Caring Hands denies that Ms. Young was required to spend any additional time in the preparation of the required notes, much less an additional 3 hours per day.

In its Answer, Caring Hands denied liability for Ms. Young's claims and asserted various defenses to liability and damages. However, rather than continuing to litigate Ms. Young's claims, the parties agreed that it was in the best interests of both sides to make a good faith attempt to resolve this matter. Based on her allegations, Ms. Young calculates that she is due between $65,128.00 and $130,000.00, depending on whether the FLSA's two year or three year statute of limitations is used, plus attorneys' fees and pre-interest. Thereafter, Caring Hands pulled all of Ms. Young's time records and calculated the potential half time that could be recovered by Ms. Young as overtime back wages. Using the FLSA's two year statute of limitations, Caring Hands calculated Ms. Young's maximum overtime back wages for the time recorded on her time records as $12,737.63. If the FLSA's three year statute of limitations is used (which Caring Hands denies is applicable in this case), the total maximum overtime back wages increases to $16,075.53. Including liquidated damages under the FLSA, Caring Hands calculates that Ms. Young's potential maximum recovery from Caring Hands for overtime back wages is between $25,475.26 and $32,151.06.

Earlier this month, Caring Hands and Ms. Young reached an agreement to resolve her claims for a total of $75,000. Over the next several weeks, the parties continued to negotiate the specific terms of the agreement and exchanged drafts of a written settlement agreement. On August 26, 2022, the settlement was memorialized in a Settlement Agreement, which has been fully executed by the parties and which is attached to this Motion as **Exhibit A**.

## II.   ARGUMENT

All settlements of claims asserted under the FLSA, whether an individual action or a collective action, must be approved by either the Department of Labor or a court. *Baust v. City of Virginia Beach*, 574 F. Supp. 3d 358, 363 (E.D. Va. 2021)(Smith, J.). "The court must determine whether the proposed Settlement Agreement 'is a fair and reasonable resolution of a bona fide

dispute over FLSA provisions.'" *Id.* In evaluating the fairness of settlements under the FLSA, this Court has relied on six factors: (1) the extent of discovery that has taken place; (2) the state of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff(s); (5) the probability of the plaintiff's success on the merits; and (6) the amount of the settlement in relation to the potential recovery. *Id.* In evaluating these factors, the Court "must also keep in mind that [a] compromise is the essence of a settlement" and should not make the parties justify each term of the settlement against some hypothetical measure of what might have been obtained. *Id.* "Moreover, 'there is an overriding public interest in favor of settlement' and 'a strong presumption in favor of finding a settlement fair.'" *Id.* (internal citations omitted).

### A.     The Proposed Settlement is Fair and Reasonable.

For the reasons discussed below, the proposed settlement terms in this case are fair and reasonable for Ms. Young and Caring Hands. The settlement represents a good faith compromise of the parties' *bona fide* dispute regarding liability, the amount of back pay, whether liquidated damages would be warranted, and other such issues. *See Baust*, 574 F. Supp. 3d at 365 (stating that a "bona fide dispute exists when an employee makes a claim that he or she is entitled to overtime payment" and that, to settle such dispute, "there must be some resolution of the number of hours worked or the amount due"). This compromise was reached after arms-length negotiations spanning several weeks between the parties.

#### 1.     The Extent of Discovery

Although the parties did not engage in formal discovery prior to reaching the present settlement, Ms. Young's counsel engaged in extensive interviews with Ms. Young to prepare for the case, including discussions of the allegations forming the basis of her Complaint and First Amended Complaint, and spent a considerable amount of time talking with Ms. Young about her

4

job duties, her hours worked, and her wages. Likewise, Caring Hands provided Ms. Young's personnel file, time reports, and daily progress notes to its counsel, and counsel interviewed management at Caring Hands about Ms. Young's employment, job duties, hours worked, and wage payments. Caring Hands' counsel conducted an extensive review of Ms. Young's time records and conducted multiple calculations of potential amounts claimed by Ms. Young, both based on the time records submitted by Ms. Young and based on the allegations in her First Amended Complaint.

Although the parties reached different calculations of the maximum potential damages recovery by Ms. Young, the pre-settlement activities of the parties allowed them to hone in on the major issues in this case—perhaps most significantly, the amount of hours actually spent by Ms. Young in her duties—and showed that the parties were using the same methodology in making their respective calculations. Ultimately, the parties came to an agreement on a payment that fell between their respective calculations of potential back wages due. Thus, the settlement reached is reasonable, fair, and appropriately compensates Ms. Young, and the extent of the informal discovery conducted by the parties weighs in favor of approval of the settlement.

**2.     The State of the Proceedings, Including the Complexity, Expense, and Likely Duration of Further Proceedings**

Ms. Young and Caring Hands have reached an early resolution of this case. Currently, Caring Hands has filed its Answer to Ms. Young's First Amended Complaint, and the Court had set a Scheduling Conference prior to the parties' notice of this settlement. While this matter is still relatively early in the proceedings, counsel for both parties have engaged in extensive investigation of their respective cases and have sufficient information to evaluate the claims and defenses and the settlement value of Ms. Young's claims.

Absent settlement, a jury or the Court would have to decide contested issues concerning Ms. Young's job duties and the amount of hours actually worked by Ms. Young. In addition, should it be determined that Caring Hands violated the FLSA, the Court would have to decide the following issues that affect the calculation of damages: (1) whether Caring Hands can avoid the imposition of liquidated damages by proving that its actions were in good faith and objectively reasonable given the specific facts of this cause, *see* 29 U.S.C. §§ 216(b) and 260; and (2) whether Ms. Young can prove by a preponderance of the evidence that Caring Hands' violation was willful. *See* 29 U.S.C. § 255 (extending the statute of limitations for willful FLSA violations from two years to three years). Given Caring Hands' defense of reliance on the advice of its accounting professionals, the determination of these issues will also involve discovery from and depositions of third-parties. During the case, the Court would also have to consider novel issues involving the application of the VOWA to Ms. Young's employment from July 1, 2021 to the end, but not to prior periods of her employment. As such, there is some complexity to the issues remaining in this case.

Given the various arguments supporting each side's position, it is unclear how the Court would decide these issues. Both parties would likely appeal an adverse decision following summary judgment and/or a trial. Moreover, getting to a decision on these issues is likely to take several months and will involve extensive written discovery and document production, depositions, and very likely cross-motions for summary judgment. Accordingly, the expense of further proceedings to both sides will be great. This factor weighs in favor of settlement approval.

### 3.    Possibility of Fraud or Collusion

"There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Baust*, 574 F. Supp. 3d at 366. There were extensive, arms-length negotiations between experienced counsel for the parties in this matter. The parties' counsel

represented their clients zealously and obtained what both sides ultimately consider to be an appropriate settlement. Accordingly, there was no opportunity for and no possibility of fraud or collusion.

### 4. Ms. Young's Counsel's Experience in Wage and Hour Litigation

Ms. Young is represented by Christopher North, an experienced litigator. Mr. North has been practicing law in Virginia for 45 years and focuses his practice of the representation of individuals in employment and consumer protection cases. *See* **Exhibit B**, Declaration of Christopher Colt North, at ¶ 3. He is admitted to the U.S. District Courts for both the Eastern and Western Districts of Virginia, the U.S. Court of Appeals for the Fourth Circuit, and the U.S. Supreme Court. *Id.* During his career, Mr. North has served as plaintiffs' legal counsel in approximately a dozen FLSA opt-in collective actions and has represented dozens of individuals in FLSA cases. *Id.* at ¶¶ 5-6. Mr. North also has extensive experience in class action litigation under the Fair Credit Reporting Act and Telephone Consumer Protection Act. *Id.* at 7-9. Consequently, the experience of Ms. Young's counsel weighs in favor of finding the settlement fair and reasonable.

### 5. Probability of Plaintiffs' Success on the Merits

Given the facts and circumstances of this matter, both parties are exposed to great uncertainty and the need to carry their particular burdens of proof through various evidentiary means. "Whatever the relative merits of the parties' legal positions, there is no risk-free, expense-free litigation." *Sheick v. Auto. Component Carrier LLC*, 2010 U.S. Dist. LEXIS 110411, at *50 (E.D. Mich. Oct. 18, 2010). Moreover, even if liability was not in dispute, there would remain two significant damages-related issues yet to be decided. The ultimate resolution of these issues through litigation could result in widely varying results. On one end of the spectrum, an outcome could result in Ms. Young obtaining only a two-year recovery period and no liquidated damages.

On the other end of the spectrum, the outcome could result in Ms. Young obtaining a three-year recovery period and full liquidated damages. The settlement reached by the parties here mitigates that exposure and finds a middle ground between the two extremes.

### 6. The Amount of the Settlement in Relation to the Potential Recovery

According to Ms. Young's and Caring Hands' respective calculations, Ms. Young's potential recovery if she won full liquidated damages and a three-year recovery period for a willful violation is somewhere between $125,000 and $130,000. This would require Ms. Young to recover for every one of the twenty-one extra hours per week that she claims in her First Amended Complaint. If Ms. Young were to lose on the extra unpaid hours claimed per week, liquidated damages, and the third year, her best recovery would be approximately $12,000.00. Thus, her range of potential recovery is in flux.

The settlement to be paid directly to Ms. Young (exclusive of attorneys' fees and expenses) is $50,000. Thus, the settlement is approximately four times Ms. Young's worst potential outcome and constitutes 40% of Ms. Young's best case scenario. Caring Hands is also paying an additional $25,000 to Ms. Young's attorney as reimbursement for the attorneys' fees and expenses incurred by Ms. Young in this matter. Given the substantial litigation risks going forward for both sides, as well as the delay and expense related to several months of protracted litigation, the settlement is fair, reasonable, and adequate and the result of arms-length bargaining with qualified, experienced counsel. For this reason, too, the settlement should be approved.

### B. The Court Should Approve the Proposed Payment to Ms. Young's Counsel

In addition to back wages, the FLSA also includes a fee-shifting provision allowing a successful plaintiff to receive her reasonable attorneys' fees and costs. 29 U.S.C. § 216(b). Thus, this Court also must review the reasonableness of counsel's legal fees and expenses "to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the

wronged employee recovers under a settlement agreement." *Baust*, 574 F. Supp. 3d at 364. In reviewing an award of such fees and expenses, this Court utilizes the following three-step process: (1) determine the lodestar amount by multiplying a reasonable hourly rate by the amount of hours reasonably expended; (2) subtract fees spent on unsuccessful claims unrelated to successful claims; and (3) evaluate the degree of success of the plaintiff. *Id.*

For purposes of calculating the lodestar amount, Mr. North's hourly rate is $450. *See* **Ex. B** at ¶ 11. Caring Hands does not object that such hourly rate is unreasonable; in fact, it is consistent with the rates charged by Caring Hands' counsel. For example, the standard hourly rate for Randy Sparks, who is lead counsel for Caring Hands in this matter, is $425 per hour. Mr. Sparks focuses his practice on representing employers in litigation, but, otherwise, has similar credentials to Mr. North as far as bar admissions and peer recognition. However, Mr. Sparks has been practicing law for almost 26 years. Given Mr. North's additional 19 years of experience, the additional $25 per hour is not unreasonable.

According to Mr. North's billing records, he expended a total of 49 hours on this matter, while his paralegal and contract attorney spent a total of an additional eight (8) hours on this case. *See* **Ex. B** at Ex. 1. Mr. North has reviewed his billing records to attest that there was no duplicative time spent on this case and that all of the time spent was necessary and reasonable. *Id.* at ¶ 13. Caring Hands, through its counsel, has also reviewed Mr. North's billing records and has no objection to the reasonableness or necessity of the fees. Thus, the lodestar figure for the attorneys' fees and expenses is $24,327.00. *Id.* at Ex. 1.

In the opinion of the parties, consideration of the twelve *Johnson* factors (first enumerated in *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)) do not warrant an adjustment of the lodestar. As this Court recently recognized, "'[i]n FLSA cases, . . . the attorneys' fees need not be proportional to the damages [the] plaintiff[] recover[s],'" especially in contingent

fee representation. *See Baust*, 574 F. Supp. 3d at 369. Here, the attorneys' fees to be paid under the settlement are exactly "the one-third provided for in traditional contingent-fee arrangements." *Id.*

Finally, while it is not a complete recovery of everything that Ms. Young alleges she is entitled to be paid, the settlement can certainly be described as a success. As noted previously, the settlement amount to be received by Ms. Young is four times her worst case scenario and 40% of her maximum potential recovery. Thus, the parties submit that a fee award of $25,000 is reasonable and should be approved by this Court.

## III. CONCLUSION

For all of the above reasons, Ms. Young an Caring Hands respectfully submit that the proposed settlement is fair and reasonable and should be approved by the Court.

Dated: September 7, 2022

Respectfully submitted,

**CARING HANDS AND SUPPLEMENTARY ENRICHMENT EDUCATION, LLC OF VIRGINIA**

**AMBER YOUNG**

By: */s/ Randy C. Sparks, Jr.*
Randy C. Sparks, Jr. (VSB No. 40723)
KAUFMAN & CANOLES, P.C.
Two James Center
1021 East Cary Street, Suite 1400
Richmond, VA 23129
Telephone: (804) 771-5700
Facsimile: (888) 360-9092
E-mail: rcsparks@kaufcan.com

*Counsel for Defendant Caring Hands and Supplementary Enrichment Education, LLC of Virginia*

By: */s/ Christopher Colt North*
Christopher Colt North (VSB No. 16955)
THE CONSUMER & EMPLOYEE RIGHTS LAW FIRM, P.C.
5629 George Washington Memorial Hwy.
Suite D
Yorktown, VA 23692
Telephone: (757) 873-1010
Facsimile: (757) 873-8375
Email: cnorthlaw@aol.com

*Counsel for Plaintiff Amber Young*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of September, 2022, a true copy of the foregoing MEMORANDUM IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing (NEF) to the following counsel of record:

    Christopher Colt North, Esquire (VSB No. 16955)
    THE CONSUMER & EMPLOYEE RIGHTS LAW FIRM, P.C.
    5629 George Washington Memorial Hwy.
    Suite D
    Yorktown, VA 23692
    Telephone: (757) 873-1010
    Facsimile: (757) 873-8375
    E-mail: cnorthlaw@aol.com
    *Counsel for Plaintiff*


      /s/ Randy C. Sparks, Jr.
    Randy C. Sparks, Jr. (VSB No. 40723)
    KAUFMAN & CANOLES, P.C.
    Two James Center
    1021 East Cary Street, Suite 1400
    Richmond, VA 23129
    Telephone: (804) 771-5700
    Facsimile: (888) 360-9092
    E-mail: rcsparks@kaufcan.com

    *Counsel for Defendant Caring Hands and Supplementary Enrichment Education, LLC of Virginia*